N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JUL 1 5 2008    NF

Jul 15, 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

Plaintiff,

vs.

ABDERRAHMANE KHELLIL

Defendant

Case No: 08 CR 411

MAGISTRATE ASEN MAN
JUDGE        KENNELLY

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RESTRAIN, ENJOIN, OR SUSPEND ADMINISTRATIVE PROCEEDINGS SEEKING TO RESCIND DEFENDANT'S ASYLUM STATUS

The defendant is a native and citizen of Algeria, who was granted asylum by USCIS on January 6, 2000. Under §209(a), 8 U.S.C. §1159 (a), as an alien granted asylum, Defendant filed an application for adjustment of status to lawful permanent residence status with USCIS on June 4, 2003. In both applications, he asserted that he had entered the United States as a stowaway, without inspection on December 2, 1998 at Baltimore, Maryland.

These criminal proceedings commenced by the issuance of a warrant of arrest. The affidavit of probable cause subscribed by Special Agent Richard Lyons, of the Department of Homeland Security, Immigration and Customs Enforcement, stated that Defendant lied on his application for adjustment of status as to the date and place of entry into the United States. Defendant claimed that he had entered the United States as a stowaway on December 28, 1998, at Baltimore, Maryland, when in fact, he had entered the United States under the name of Marco Lubrano on December 30, 1993 at O'Hare Airport by presenting an Italian passport.

Knowledge of the Defendant's prior entry into the United States under the false

name of Marco Lubrano came to the attention of Special Agent Lyons when a landlord, cleaning an apartment previously vacated by Defendant and his brother, found documents under the apartment's refrigerator identifying Marco Lubrano, which were promptly turned over to DHS' special agents. (Exhibit A, Affidavit of Probable Cause signed by S.A. Lyons).

The discovery tendered by the government in these proceedings consists of copies of drivers' licenses issued by the Illinois MVD in the names of the Defendant and Marco Lubrano and applications for the issuance of social security numbers, but the Italian passport that a Marco Lubrano supposedly used to gain entry into the United States on December 30, 1993, was not among the documents tendered. Instead, according to Special Agent Lyons, another Algerian claiming to be a passenger on the same flight that carried Marco Lubrano to the United States on December 30, 1993, claims that Marco Lubrano and Defendant are one and the same person.

The indictment in this case charges that Defendant, on or about June 4, 2003, knowingly and wilfully made false, fictitious and fraudulent statements in a matter within the jurisdiction of the Department of Homeland Security in that he falsely represented on his application for adjustment of status that the date of his last arrival was December 2, 1998. On June 11, 2008, the Asylum Office of USCIS notified Defendant of its intent to terminate Defendant's asylum status that was granted on June 6, 2000. The notice stated that "CIS has obtained evidence that indicates fraud in your application for asylum in that you falsely represented that you entered the United States on December 28, 1998 without inspection, when in fact you entered the United States as Marco Lubrano, using an Italian passport

2

on December 30, 1993." Exhibit B attached hereto. The notice stated that if Defendant did not appear for the interview as scheduled, the asylum status would be terminated and he would be subject to removal proceedings.

It is not overstatement that the evidence of fraud alleged in the termination notice was obtained from the investigation conducted by Special Agent Lyons that culminated in the return of a criminal indictment by the Grand Jury. The allegations of fraud are identical in the notice and the indictment and relate to the same type of administrative process, i.e., asylum status and the right to adjust status based on such status. As such the termination proceeding implicates Defendant's Fifth Amendment and Sixth Amendment rights. The action of USCIS following on the heels of the return of a Grand Jury Indictment is intended to (1) obtain further evidence to bolster the government's criminal case; (2) divest Defendant of his asylum status by a mere preponderance of the evidence which will lead to removal proceedings during the pending criminal case; and (3) serve as a pretext to detain Defendant as an immigration violator once his status as asylee is terminated. .

The evidentiary standard necessary to terminate an asylee's status is a preponderance of evidence. Thus, if Defendant asserts his Fifth Amendment privilege in the asylum proceedings, by refusing to testify or produce evidence, the asylum office will terminate his status based on allegations of fraud. Since termination interviews are not adversarial proceedings, Defendant does not have the right to cross-examine material witnesses. The civil rules on discovery do not apply. Defendant does not have the right to inspect evidence against him prior to the termination interview. The notice of intent to

3

terminate Defendant's asylum status, following closely on the heels of the indictment, is

a spurious proceeding and a tactic to severely disadvantage Defendant in the criminal

proceedings.

The Immigration Act specifies the conditions for the termination of asylum status in

§208(c)(2), 8 U.S.C. §1158 (c)(2), which states:

> An alien granted asylum under subsection (b) does not convey a right to
> remain permanently in the United States, and *may be* terminated if the
> Attorney General determines that—
>
> (A) the alien no longer meats the conditions described in subsection (b)(1) owing
> to a fundamental change in circumstances;[1]
>
> (B) the alien meets the condition described in subsection (b)(2);[2]
>
> (C) the alien may be removed pursuant to a bilateral or multilateral
> agreement to a country (other than the country of the alien's nationality or
> last habitual residence) in which the alien's life and freedom would not be
> threatened on account of race, religion, nationality, membership in a
> particular social group, or political opinion and where the alien is eligible to
> receive asylum or equivalent temporary protection;
>
> (D) the alien has voluntarily availed himself or herself of the protection of the
> alien's country of nationality or in the case of an alien having no nationality,

---

[1] Subsection (b)(1) of Section 208 states that the alien must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.

[2] Subsection (b)(2)(i)-(vi)bars asylum to those aliens who have participated in the persecution of others on account of race, religion, nationality, membership in a particular social group, or political opinion or who have been convicted of a particularly serious crime and are a danger to the community of the United States; or that there are reasons to believe that the alien has committed a serious nonpolitical crime outside the United States or that the alien is a danger to the community of the United States, or is a terrorist or that the alien was firmly resettled in another country prior to arriving in the U.S.

4

the country of the alien's last habitual residence, by returning to such country with permanent residence status or has a reasonable possibility of obtaining such status with the same rights an obligations of other permanent residents of that country; or

(E) the alien has acquired a new nationality and enjoys the protection of the country of that nationality.

Section 208(c) does not, by its terms, require the automatic termination of asylee status. It authorizes, but does not compel, the Attorney General to act. In Re K-A-, 23 I. & N. Dec. 661*11-12 (BIA, 2004). The Board, In Re K-A-, rejected the argument that §208(c), requires the Attorney General to terminate asylum status if any of the statutory conditions exist, and interpreted the statute's wording by the use of the verb "may" as designating discretionary, not mandatory, termination in every instance. 23 I&N at *13. Presumably, the asylum office knows of this decision and if so, then why is it initiating proceedings that implicate Defendant's Fifth and Sixth Amendment rights and hamper his defense against the criminal charges? What is the hurry?

The regulations, 8 C.F.R. §208.24(a), allows termination of asylum by the Service if, following the interview, the asylum officer determines that:

(1) There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted;

(2) As to applications filed on or after April 1, 1997, one or more of the conditions described in section 208(c)(2) of the Act exist; or

(3) As to applications filed before April 1, 1997, the alien no longer has a well-founded fear of persecution upon return due to a change of country conditions in the alien's country of nationality or habitual residence or the alien has committed any act that would have been grounds for denial of

5

asylum under § 208.13(c)(2).

(3) The alien has committed any other act that would have been grounds for denial of withholding of removal under section 241(b)(3)(B) of the Act had it occurred prior to the grant of withholding of removal; or

(4) For applications filed in proceedings commenced before April 1, 1997, the alien has committed any act that would have been grounds for denial of withholding of deportation under section 243(h)(2) of the Act.

The grounds for terminating asylum status primarily relate to the whether the conditions giving rise to persecution still exist and/or whether the alien has a safe haven in another country. However, the regulations also specify that asylum can be terminated if the alien committed fraud or another particularly serious crime that would bar withholding of removal. Section 208(c) does not specify fraud as a ground of termination. The fraud ground is a product of regulation. Fraud that is material and wilful nullifies the grant of asylum and a more appropriate means to address fraud is to revoke, not terminate, an asylee's status.

The Supreme Court has held that the government may conduct parallel civil and criminal investigations without violating the due process clause, so long as it does not act in bad faith. U.S. v. Kordel, 397 U.S. 1, 11, 90 S. Ct. 763(1970). In that case, the FDA issued a request for information that was ultimately used in a subsequent criminal proceeding. In Kordel, the Supreme Court reasoned that the FDA made similar requests as a matter of course in 75% of its civil investigations. 397 U.S. at 6. In this case, the civil case did not precede the criminal case.

In SEC v. Dresser, 628 F.2d 1368, 1376-77 (D.C. Cir. 1980) (en banc), the federal circuit court refused to block parallel investigations in the absence of 'special

6

circumstances' in which the nature of the proceedings demonstrably prejudices substantial rights of the investigated party or of the government. This is such a situation, where, unlike U.S. v Unruh, 855 F.2d 1363, 1374 (9th Cir. 1987), civil termination proceedings followed the return of a Grand Jury indictment.

There is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions. Parallel civil and criminal proceedings instituted by different federal agencies are not uncommon occurrences because of the overlapping nature of federal civil and penal laws. The simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions. SEC v. Amerifirst Funding, Inc., 2008 U.S. Dist. LEXIS 21229 (N.D. Tex., decided on March 17, 2008).

However, beyond dispute, this court has authority to stay civil proceedings pending the resolution of a parallel criminal case in the face of substantial prejudice to Defendant's rights and because the interests of justice require such action Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995); Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.,Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); U.S. v. Any and All Assets of that Certain Business Known as Shane Co., 147 F.R.D. 99, 101 (M.D.N.C. 1992).. The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case. Favaloro v. S/S Golden Gate, 687 F.Supp. 475, 482 (N.D.

Cal. 1987).

In determining whether or not to grant a stay a court should consider ]the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. Parker v. Dawson, 2007 U.S. Dist. LEXIS 63068 at * 11(E.D. N.Y. 2007); U.S. v. Shank, 2006 U.S. Dist. LEXIS 22065 (S.D.Ill. 2006). Where a civil and criminal proceeding overlap in subject matter, there is a concern that the broader scope of civil discovery may be used by the Government to advantage in a criminal prosecution, by undermining a criminal defendant's Fifth Amendment privileges or exposing the grounds of a criminal defendant's defense to the prosecution in advance of trial. AWS Management, LLC v. U.S., 2006 U.S. Dist. LEXIS 24894 (N.D. Dist. Calif. 2006).

In Benevolence International Foundation v. Ashcroft, 200 F. Supp. 2d 935 ( N.D. Ill. 2002), the Plaintiff received a notice from the Treasury Department's Office of Foreign Assets Control that it was blocking all BIF's funds, accounts and business records pending further investigation, on grounds that there was reason to believe that the organization was supporting terrorist organizations and individuals. The notice required immediate production and surrender of all BIF's records, including personal computers, pursuant to IEEPA. The FBI searched Plaintiff's Chicago offices and the home of its Chief Executive

Officer, Enaam Arnaout ("Arnaout"), seizing from both places items such as financial records, office equipment, and personal property. Plaintiff challenged the constitutionality of the FBI searches and the emergency seizure of its assets and moved for injunctive relief. In a lengthy affidavit, the organization's Chief Executive Officer stated that the organization has never provided aid or support to people or organizations known to be engaged in violence, terrorist activities, or military operations of any nature. Subsequently, criminal charges were issued against Arnaout and his organization for having "knowingly submitted false material declarations under oath" in this civil proceeding. The Attorney General moved to stay the civil proceedings pending the resolution of the criminal case. The district court stayed the civil case because the criminal proceedings would resolve the critical issue of whether BIF's motion for preliminary injunction in this case is supported by a perjured affidavit, namely Arnaout's sworn statement. Id at 940. Similar reasons justify a stay of the termination proceedings in this case.

Respectfully submitted,

MARY L. SFASCIOTTI
Attorney for Defendant

LAW OFFICES OF MARY L. SFASCIOTTI, P.C.
Suite 1215, 79 West Monroe
Chicago, IL 60603
Phone: 312 726-3278 *Fax: 312 726-1325

9

STATE OF ILLINOIS )
        )  SS
COUNTY OF COOK  )

## AFFIDAVIT

I, RICHARD LYONS, being duly sworn, hereby depose and state:

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Joint Terrorist Task Force in Chicago, Illinois, and have been a Special Agent for approximately 21 years. I am a graduate of the Federal Law Enforcement Training Center, Glynco, Georgia, where I received extensive training and instruction in federal law, rules of evidence, and federal investigative techniques. During my time in law enforcement, I have received extensive training in and developed extensive experience with crimes involving alien smuggling, counterfeit documents, illegal United States entries, marriage fraud and immigration fraud investigations.

2. The information provided in this affidavit was obtained from personal observations, training and experience, interviews of sources, my review of records, my personal knowledge of this investigation and information from other law enforcement officers. The information is solely a summary of the facts known in this case and is submitted for the limited purpose of establishing probable cause in support of a Complaint charging ABDERRAHMANE KHELLIL with violating federal criminal law, Title 18 U.S.C. Section 1001. This affidavit does not contain all the facts known to me concerning this investigation.

3. On the basis of this information, I allege facts contained herein to show that there is probable cause to believe that defendant ABDERRAHMANE KHELLIL did

1

EXHIBIT

_A_

knowingly and willfully make materially false writings knowing the same to contain a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the Department of Homeland Security Immigration and Customs Enforcement ("ICE"), an agency within the executive branch of the Government of the United States, in that KHELLIL falsely represented on a Form I-485, Application to Register Permanent Residence or Adjust, that his place of last entry into the United States was Maryland and that he was not inspected by a U.S. Immigration Officer; in violation of Title 18, United States Code, Section 1001(a)(3).

## Khellil Statements to DHS/ICE

4.      Based on information provided by law enforcement sources, the Department of Homeland Security, Immigration and Customs Enforcement (ICE) has been investigating ABDERRAHMANE KHELLIL for immigration fraud.

5.      On September 27, 1999, Abderrahmane KHELLIL filed with the Immigration and Naturalization Service (INS) a sworn application for Asylum and Withholding of Removal. He listed his date of birth as September 10, 1972, and place of birth as Algiers, Alegeria. KHELLIL provided the address of 425 Stockton Street, #607, San Francisco, California as his home address on the application. On November 1, 1999, the KHELLIL Asylum application was received by the INS, San Francisco, CA office. KHELLIL claimed on the application that on December 2, 1998 he departed Algeria by cargo ship destined for the United States and arrived in the United States on December 28, 1998 at Baltimore, Maryland, as a stowaway on a cargo ship and without U.S Immigration Inspector's admission. KHELLIL checked the box "NO" on the asylum application when asked if he had previously entered the United States. KHELLIL also made claims

2

in the sworn asylum application that while he was living in Algeria in 1997-1998, he was afraid he would be killed by the Armed Islamic Group, known by its initials in French, "GIA," for "Groupe Islamique Armee."

6.     An Asylum application must be filed within a one-year period from the alien's arrival into the United States. See 8 CFR § 208.4.

7.     On December 1, 1999, KHELLIL was interviewed by an Immigration and Naturalization Service (INS) asylum officer in the San Francisco office.  KHELLIL confirmed the claims he made in his sworn asylum application by stating to the Asylum Officer that he last arrived in the United States on December 28, 1998 at Baltimore, Maryland, as a stowaway on a cargo ship.

8.     On January 6, 2000, on the basis of KHELLIL'S information and representations the Immigration & Naturalization Service (INS) San Francisco Asylum office approved the KHELLIL asylum application.

9.     On June 4, 2003, a Form I-485 (Application to Register Permanent Residence or Adjust Status).  The Form I-485 was mailed from the Law Office of Kenneth Geman & Associates to Citizenship and Immigration Service, Lincoln, NE for processing. KHELLIL submitted Form 1040 (U.S. Individual Income Tax Form) tax returns for years 2000, 2001 and 2002 to support the filing of CIS Form I-485. The 2000, 2001 and 2002 Federal tax returns provided the home address of 4207 North Kedvale, 2D, Chicago, Illinois as KHELLIL'S residence.  This form also, as in his asylum application, states that his last place of entry into the United States was Maryland and that he was not inspected by a U.S. Immigration Officer.

3

10.    On December 19, 2005, an updated Form G-325A (Biographical Information) was mailed to Citizenship & Immigration Service (CIS) in support of KHELLIL'S Form I-485.    KHELLIL'S G-325A states that Abderrahmane KHELLIL resided at 125 Stockton, San Francisco, CA from December 1998 until February 2002.  This statement is contrary to U.S. addresses provided on 2000, 2001 and 2002 Federal tax returns submitted in behalf of his filing of Form I-485.  The Form G-325A was mailed from the Law Office of Kenneth Geman & Associates to Citizenship and Immigration Service, (CIS) Lincoln, NE for processing of Form I-485 (Application to Register Permanent Residence or Adjust Status).

11.    On July 17, 2007, KHELLIL mailed an AR-11 (Alien's Change of Address Card) that indicated that  KHELLIL moved from 4059 N. Kilbourn, Chicago, Illinois to 5215 West Byron Avenue, 2nd Floor, Chicago, Illinois.  On the AR-11 KHELLIL again stated that he entered the United States on December 28, 1998, at Maryland.

### Evidence of Falsity of Khellil's Statements to DHS/ICE

12.    On June 27, 2005 , a property management company turned over to ICE two sets of identification documents that were found underneath a refrigerator in a then recently vacant apartment at 4207 N Kedvale, #2D, Chicago, Illinois. The identification documents provided to ICE included (i) an Illinois Commercial Driver's License (CDL) photo license issued to an individual named Marco Lubrano with a date of birth of July 25,1972, and (ii) a Social Security card bearing the number xxx-xx-7326 issued to Marco Lubrano. The property management company indicated that the 4207 North Kedvale, #2D, Chicago, Illinois apartment was leased to Abderezack Khellil from 2000–2004.

4

13.     A review of alien files and immigration databases revealed that Abderezack Khellil and Abderrahmane KHELLIL are brothers.  Abderezack Khellil entered the United States on September 9, 1996, as a recipient of a diversity visa.

14.     I queried the Treasury Enforcement Communications database for travel information regarding the name Marco Lubrano and date of birth July 25, 1972.  The database showed that on December 30, 1993, an individual named Marco Lubrano with the date of birth of July 25, 1972, arrived at Chicago O'Hare International Airport on Scandinavian Airlines flight from Copenhagen, Denmark and presented U.S. Immigration Inspectors with an Italian passport for admission into the United States.

15.     In 2006, a cooperating witness (hereinafter CW) informed ICE agents that the CW knew a man named Abderrahmane KHELLIL in Copenhagen, Denmark and that he had flown on a plane with KHELLIL on December 30, 1993 from Copenhagen, Denmark to Chicago, O'Hare International Airport.  The CW himself acknowledged traveling on a false passport Italian passport that he had purchased in Denmark.  At the time of the flight, the CW did not know what type of identification documents KHELLIL presented for entry into the United States.

16.     The CW learned shortly after arriving in the United States in December of 1993 that KHELLIL was using the name Marco Lubrano.  The CW knew this because he observed the name "Marco Lubrano" on the mailbox where KHELLIL was living in Justice, Illinois.

17.     An ICE inquiry of the Social Security Department regarding Marco Lubrano revealed that on February 10, 1994, an individual named Marco Lubrano with the date of birth of July 25, 1972, applied for and received a social security card bearing the number

5

xxx-xx-7326. The social security card issued contained the wording "not valid for employment." Social Security Administration records reflect that Lubrano provided the home address of 1 Hickory Trace Drive, Building #23, Justice, Illinois on the Social Security application and indicated his place of birth as Figua, Italy. The card was issued at a Social Security office on the North Side of Chicago.

18.      The ICE inquiry to the Social Security Department also revealed that on March 03, 1994, an individual named Marco Lubrano with the date of birth of July 25,1972, applied for and received a replacement Social Security card bearing number xxx-xx-7326 from the Social Security Administration. Lubrano provided the home address of 1 Hickory Trace Drive, Building #23, Justice, Illinois, on the Social Security application and indicated his place of birth as Figua, Italy. The card was issued at the same Social Security office on the North Side of Chicago referenced in the paragraph above described above.

19.      A law enforcement query of Illinois Secretary of State databases revealed that on November 24, 1998, an individual named Marco Lubrano with the date of birth of July 25, 1972, was issued an Illinois CDL photo license, L165-5407-2211 containing the social security number xxx-xx-7326. The Illinois CDL photo license included the address of 8650 South 84th Court, Hickory Hills, Illinois 60457. I reviewed the photo on the Illinois CDL photo license of Lubrano and recognized it to be KHELLIL based on the photograph he provided to DHS/ICE with his asylum application and the photograph on KHELLIL'S Illinois CDL photo license.

20.      The law encodement inquiry further revealed that on July 23, 1999, an individual named Marco Lubrano with date of birth of July 25, 1972 was issued another Illinois

6

CDL photo license, L165-5407-2211. The Illinois CDL photo license included the address of 8650 South 84th Court, Hickory Hills, Illinois 60457. I reviewed the photo on the Illinois CDL photo license of Lubrano and recognized it to be KHELLIL based on the photograph he provided to DHS/ICE with his asylum application and the photograph on KHELLIL'S Illinois CDL photo license.

21.     A search of law enforcement databases revealed that KHELLIL'S brother, Abderezack Khellil, at some time resided at 8640 South 84th Court, #1, Hickory Hills, Illinois 60457.

22.     Social Security Administration records revealed that on May 24, 2000, KHELLIL applied for and received a Social Security card bearing number xxx-xx-1619 in the name Abderrahmane Khellil. The Social Security Administration indicates that KHELLIL presented documentation indicating "alien allowed to work". KHELLIL provided the home address of 9333 South Harlem Avenue, #11A, Oak Lawn, Illinois 60457 on the Social Security application and indicated his place of birth as Algiers, Algeria. The social security card was issued at the same Social Security office on the North Side of Chicago as the social security cards issued to Marco Lubrano in 1994 as described in paragraphs 17 and 18 above..

23.     On May 25, 2000, KHELLIL applied for and received a replacement Social Security card bearing number xxx-xx-1619. The Social Security Administration file indicates that KHELLIL presented documentation indicating "alien allowed to work". The replacement social security card was issued at the same Social Security office on the North Side of Chicago as the social security cards issued to KHELLIL the day before and to Marco Lubrano in 1994.

7

24.    Illinois Corporation records indicate that on October 4, 2000, KHELLIL filed corporation documents as the President and agent of Khellil Brothers, Inc., located at 2960 North Lincoln Avenue, Chicago, Illinois. It also listed Abderrahmane KHELLIL, President, as residing at 9333 South Harlem Avenue, Oak Lawn, Illinois 60453.

25.    A TransUnion Credit Report of an individual named Marco Lubrano associated with Social Security number xxx-xx-7326 showed that at some point Lubrano resided at address 9333 South Harlem, #11A, Oak Lawn, Illinois 60453.

26.    Based on the facts described above, I submit that there is probable cause to believe that on June 4, 2003, at Chicago, in the Northern District of Illinois, KHELLIL did knowingly and willfully make materially false writings knowing the same to contain a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the Department of Homeland Security Immigration and Customs Enforcement ("ICE"), an agency within the executive branch of the Government of the United States in that the defendant falsely represented on a Form I-485, Application to Register Permanent Residence or Adjust, that his place of last entry into the United States was Maryland and that he was not inspected by a U.S. Immigration Officer; in violation of Title 18, United States Code, Section 1001(a)(3).


_____
Richard Lyons, Special Agent
Department of Homeland Security, ICE


Subscribed and sworn to before me,
This 22nd day of May, 2008


_____
U.S. Magistrate Judge

8



U.S. Department of Homeland Security
Chicago Asylum Office
401 S. LaSalle St, Suite 1600
Chicago, Illinois 60605

**U.S. Citizenship
and Immigration
Services**

RECEIVED
JUN 1 6 2008

Date:  JUN 1 1 2008

A #77 829 643

Abderrahmane KHELLIL
52 15 W. Byron Avenue, Apt 2nd FL
Chicago, IL 60641

## Notice of Intent to Terminate Asylum Status

Dear Mr. Khellil:

The purpose of this letter is to notify you of the intent of U.S. Citizenship and Immigration Services (CIS) to terminate the asylum status you were granted on **January 6, 2000**. This office has received the following information indicating that your asylum status could be terminated pursuant to 8 CFR 208.24(a) (1):

• CIS has obtained evidence that indicates fraud in your application for asylum such that you were not eligible for asylum at the time it was granted: In your asylum application and sworn testimony during your asylum interview, you attested to having arrived to the United States as a stowaway on a cargo ship and entered without inspection at Baltimore, Maryland on December 28, 1998. Your claim for asylum revolved around events that you testified happened to you in your home country of Algeria starting in July of 1998. The service has obtained evidence which indicates that contrary to your asylum claim, you previously entered the United States using an Italian passport, at Chicago O'Hare International airport on December 30, 1993. You used the same fraudulent identity to obtain identity documents in the United States, all of which predate your claimed 1998 entry without inspection and your claimed harm in your home country.

In order to give you the opportunity to respond to this adverse information, we have scheduled a termination interview at least thirty (30) days after the date of this notice to give you sufficient time to prepare for the interview.

**Interview Date:**          Monday July 14, 2008

**Time:**                    8:00 AM

**Place:**                   401 S. LaSalle, 8th Floor, Chicago, IL 60605

In addition to this notice, you must bring the following to your interview: a written form of identification, if available, that shows your name, date and place of birth, and nationality; the original and two copies of evidence of your relationship to family members on your I-589 (marriage or birth certificates, or affidavits) if not already submitted with your application; and other evidence not submitted before. If you cannot speak English fluently, you must bring a competent interpreter who must be at least 18 years of age. Neither the representative of record, a witness testifying on your behalf, nor a representative or employee of your country of nationality, or if stateless, country of last habitual residence, may serve as your interpreter.



**EXHIBIT**

B

You will have the opportunity at the interview to present information and evidence to show that you are still eligible for asylum. Your asylum status will not be terminated unless a preponderance of the evidence supports termination. You may be represented at the termination interview. Attached to this letter is a list of legal providers that may provide you with legal assistance at no or low cost. Your dependents, who were included in your asylum application or who entered the U.S. pursuant to a Form I-730, Refugee/Asylee Relative Petition, must also accompany you to the interview.

If CIS determines that you are no longer eligible for asylum, your asylum status and employment authorization will be terminated, and you will be placed in removal proceedings. You may renew your request for asylum before an Immigration Judge.

If you are unable to attend the interview on the date scheduled, you must contact this office in writing before the interview to request that the interview be re-scheduled. Failure without good cause to appear for this interview may result in the termination of your asylum status and any employment authorization, and referral of your case to an immigration judge.

If you wish to waive the thirty (30) day preparation period and request an earlier interview, or admit the adverse information contained in this notice and waive the opportunity to present a rebuttal provide, indicate your request on the attached form and return it to the address at the top of this letter before the date of the scheduled interview. The asylum office will accommodate your request for an earlier interview if resources permit. If you wish to waive the opportunity to provide a rebuttal, the asylum office will terminate your asylum status and refer your case to an immigration judge.

Sincerely,

Kenneth S. Madsen
Director, Chicago Asylum Office


Attach:  Legal Provider List
         Optional Waiver of Rebuttal Period and/or Waiver of Opportunity to Rebut Notice of Intent to Terminate
         Asylum Status

# Optional Waiver of Rebuttal Period and/or Waiver of Opportunity to Rebut
## Notice of Intent to Terminate Asylum Status

| Name: Abderrahmane KHELLIL | Alien number: A77 829 643 |
|---|---|
| Address: 52 15 W. Byron Ave., Apt 2nd Fl, Chicago, IL 60641 | Telephone: |

**Instructions:** Complete this form **only if** you wish to waive the 30-day rebuttal preparation period and/or your opportunity to present a rebuttal. Return the form to the CIS address on the Notice of Intent to Terminate Asylum Status, attention: **ZCH071 (SAO).**

**If you wish to waive the 30-day preparation period and request an earlier appointment,** complete Part I.

**If you wish to waive the 30-day preparation period AND you wish to waive the interview and opportunity to present a rebuttal to the evidence of grounds for termination of your asylum status,** complete Parts I and II.

| | Write your initials below to agree with the statement at left. |
|---|---|
| • I understand that CIS intends to terminate my asylum status. | |
| • I acknowledge that I was informed of the grounds for termination. | |
| • I understand that termination of my asylum status will result in the termination of asylum status of any family member who obtained derivative asylum status through me. | |
| • I understand that I have 30 days to prepare a rebuttal to the adverse information constituting the grounds for termination and have been offered an opportunity to present the rebuttal. | |
| • I wish to waive the 30-day rebuttal period and request an earlier appointment. | |

| | Write your initials below to agree with the statement at left. |
|---|---|
| • I admit the adverse information contained in the Notice of Intent to Terminate. | |
| • I wish to waive the opportunity to present a rebuttal to the grounds for termination so that CIS will proceed with termination of my asylum status immediately. | |

_____ (Signature)  _____ (Printed Name)  _____ (Date)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERCA,
                    Plaintiff,

vs.
                                                    Case No.  08 CR 411

ABDERRAHMANE KHEILLIL,
                    Defendant.

## CERTIFICATE OF SERVICE

The undersigned, being duly sworn, under oath states that on July 15, 2008 at the hour of 2:00 P.M. she served a copy of the documents attached hereto and described below, upon the person or persons at the addresses listed below:

**DOCUMENTS SERVED:**          **Defendant's Memorandum of Law in Support of Motion to Restrain, Enjoin, or Suspend Administrative Proceedings Seeking to Rescind Defendant's Asylum Status**

**NAME AND ADDRESS OF**        **Assistant U.S. Attorney Margaret Hickey U.S. Attorney's Office 219 South Dearborn Street Chicago, Illinois**

Diane C. Bradford

SUBSCRIBED and SWORN to before me this  15th  day of  July , 2008.

Notary Public

OFFICIAL SEAL
Mary L. Sfasciotti
Notary Public, State of Illinois
Commission Expires on:
June 26, 2011

My commission expires on: June 26, 2011

LAW OFFICES OF MARY L. SFASCIOTTI, P.C.
Suite 1215, 79 West Monroe Street
Chicago, Illinois 60603
Phone: 312-726-3278
Fax: 312-726-1325